```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF MICHIGAN
                       SOUTHERN DIVISION

  TDC INTERNATIONAL CORP.,

                 Plaintiffs,         Case No. 08-14792
     -v-

  JAE L. BURNHAM,

                 Defendants.
  _____/

                       MOTION HEARING

         BEFORE THE HONORABLE ROBERT H. CLELAND
                United States District Judge
         Theodore Levin United States Courthouse
                 231 West Lafayette Boulevard
                       Detroit, Michigan
                Wednesday, December 10, 2009

  APPEARANCES:

  FOR THE PLAINTIFF:
                        ARNOLD S. WEINTRAUB
                        Weintraub Group
                        28580 Orchard Lake Road, Suite 140
                        Farmington Hills, MI 48334-1569
                        (248) 865-9430

  FOR THE DEFENDANT:    MARK A. CANTOR
                        BRIAN S. TOBIN
                        Brooks & Kushman
                        1000 Town Center, 22nd Floor
                        Southfield, MI 48075-9871
                        (248) 358-4400




             To Obtain a Certified Transcript Contact:
    Christin Russell, CSR, RPR, FCRR, CRR - (313) 964-2026
        Proceedings produced by mechanical stenography.
     Transcript produced by computer-aided Transcription.
```

TABLE OF CONTENTS
_____

| IDENTIFICATION | PAGE |
|---|---|
| Argument by Mr. Cantor........................... | 3 |
| Argument by Mr. Weintraub........................ | 7 |
| Rebuttal by Mr. Cantor........................... | 10 |
| Ruling by the Court.............................. | 11 |
| Certificate of Court Reporter.................... | 20 |

```
 1  Detroit, Michigan
 2  December 10, 2009
 3  10:00 a.m.
 4                      *    *    *
 5              (Call to Order of the Court.)
 6          THE CLERK:  Calling case No. 08-14792.  TDC
 7  International Corporation vs. Jae Burnham.
 8          THE COURT:  And for Plaintiff, first?
 9          MR. WEINTRAUB:  Arnold Weintraub, your Honor.
10          THE COURT:  Mr. Weintraub.
11          And for Defendant?
12          MR. CANTOR:  Mark Cantor and Brian Tobin, your
13  Honor.
14          THE COURT:  All right.  Counsel, this is Mr.
15  Burnham, as Defendant, his counsel's motion to withdraw
16  from representation on this matter.  And that is your
17  motion, principally, Mr. Cantor.
18          MR. CANTOR:  Thank you, your Honor.
19          THE COURT:  I have, in addition, just initially,
20  you would note here that I, in setting this hearing,
21  directed that the defendant should personally attend.  And
22  you'll comment on that, I know.
23          MR. CANTOR:  Correct, your Honor.
24          THE COURT:  Go ahead.
25          MR. CANTOR:  First of all, Mark Cantor.  I think
```

1    it may be defendant or defendants.
2            THE COURT:  It is -- well, it's a d/b/a.
3            MR. CANTOR:  Right.
4            THE COURT:  Quick and Easy Moving and Quick and
5    Easy Moving, LLC.
6            MR. CANTOR:  This is actually -- usually these
7    matters are fairly simple, motions to withdraw as counsel.
8    There's the state rule of ethics and the rules that govern
9    lawyers set forth conditions upon which a lawyer can
10   withdraw from representation.  Usually there's breakdown in
11   the attorney/client relationship, very often relates to not
12   being paid, disagreement, things like that.
13           This case is somewhat unusual, which is why I
14   wanted to come down, is because one of the issues that's
15   been coming up a lot is when does representation terminate
16   of a client.
17           This one, the activities occurred shortly after
18   the final judgment in the case.  But it's interesting, I've
19   settled cases over the last 20 years here.  In the system,
20   I guess under this scenario, I'm still counsel for them,
21   even after the case has terminated, even though I may not
22   have done work for them in ten years.  It's a very
23   interesting issue.  It creates incredible liability issues
24   for us as well, which we go around with our carrier all the
25   time about do you send termination of representation

1  letters once you finish a lawsuit, which even under today's
2  scenario wouldn't help me because I'm still of record in
3  the federal court system.  So it's a very interesting
4  issue.
5           In this particular case, you ordered the
6  defendant to be here.  The defendant was notified to be
7  here.  And we have provided the Court with an e-mail we
8  received this morning.  It was sent about four a.m.  I
9  think we got it seven or eight a.m., in which he said
10 because of the weather, he said to please apologize to the
11 Court and let you know he could not attend.  We provided
12 that to the Court and to Mr. Weintraub to review.
13          The interesting issue in this case is that after
14 we settled the case, we terminated our representation with
15 Mr. Burnham.  We provided the Court with a copy of that
16 letter.  Mr. Weintraub, we discussed this earlier, believes
17 that Brooks Kushman should have some obligation towards the
18 settlement because we signed the consent judgment, which by
19 the way, we were required to do under the rules anyway.  In
20 fact, your office called me -- I was in front of Judge
21 Borman -- to come down here and sign it.
22          And it's a very interesting theory as to whether
23 a law firm can be held responsible for the settlement
24 obligation of a client in a lawsuit.  I think I haven't
25 seen any authority for that, but I think it would be quite

1    a unique ruling.  And it would certainly change the nature
2    of attorney/client relationship to rule on something like
3    that.  But I think at this point, that issue hasn't been
4    flushed out enough and I don't think it's appropriate.
5             More importantly, in this case, the basis for
6    withdrawal is more, that I believe, clerical in this case.
7    We provided a letter that we terminated our attorney/client
8    relationship after the case was settled.  There's been
9    nothing in the record to contradict that, not by Mr.
10   Burnham who has received notice of everything, not by the
11   plaintiffs, who have also seen that letter.  Our
12   attorney/client relationship ended upon sending that
13   letter.  The only reason we're still of record is because
14   the way the federal court system works today, we seem to be
15   of record forever once you're in the electronic system.
16            So the question should be, should we be allowed
17   to withdraw.  I believe we should, where there is no longer
18   an attorney/client relationship.
19            Now, the other issue that we discussed briefly,
20   and I just want to comment on it, in chambers, is that what
21   we knew or didn't know, what we discussed with Mr. Burnham
22   prior to the settlement being signed. Unfortunately, I am
23   not at liberty to discuss that with the Court.  That did
24   constitute attorney/client communications.  It is not my
25   privilege to waive.  It's only Mr. Burnham's privilege to

1   waive, and at least as of this point, it's not waived.

2           And I think your Honor's directive to have him
3   here would have been a good one, because then he could have
4   said what we discussed, it's his to waive.  Or he could
5   have said to me, Mr. Cantor, go ahead, you're free to tell
6   them what we discussed.  I can only tell you it has been my
7   practice for years, when I enter into something, I fully
8   expect that my client will comply with it.  And I can't
9   really go much beyond that with this case.

10          Other than that, I think it's a very simple
11  motion.  It's a motion to withdraw.  And I think anything
12  beyond that is really beyond the scope of what we're here
13  for.

14          THE COURT:  Thank you, Mr. Cantor.

15          Mr. Weintraub?

16          MR. WEINTRAUB:  Yes, your Honor.  Thank you.

17          From my perspective, I don't think it's that
18  simple, your Honor.  One thing I must point out is that we
19  don't know Mr. Burnham's position about permitting Brooks &
20  Kushman to withdraw with respect to this matter.  And I
21  think from my perspective, we've wasted the time by coming
22  down here without knowing Mr. Burnham's position.

23          I note that the e-mail came in at 3:50 this
24  morning.  Obviously, someone was at Brooks & Kushman's
25  office this morning to retrieve this.  And I think a simple

1  phone --
2           THE COURT:  No.  That, I think the implication
3  would be that someone was at the sending address in order
4  to hit the button to dispatch it.
5           MR. WEINTRAUB:  You got this this morning.
6           MR. CANTOR:  Your Honor, we got it on our
7  Blackberries.  And then Mr. Tobin was downtown, he went
8  over and printed it out at Kinko's.
9           THE COURT:  I understand it was sent this morning
10 early.
11          MR. WEINTRAUB:  Yeah, 3:50 a.m.
12          THE COURT:  Okay.
13          MR. WEINTRAUB:  I, if Mr. Burnham wasn't here,
14 then we could have been contacted and not spent the time to
15 come down here.  But all that aside, because I still think
16 it's important to get Mr. Burnham's position as to the
17 propriety of the withdrawal.
18          I saw the letter for the first time that they
19 sent to Mr. Burnham when they attached it to the motion.
20 And I do believe it's the client's, just as much as its
21 counsel, their client's position as to whether or not he
22 wants them to withdraw.  And I do believe that he has to be
23 here in order to fully resolve that issue.
24          But more importantly, your Honor, and as we
25 discussed in chambers -- and Mr. Cantor is right, there's

1  really probably no authority on this.  I've heard it
2  hypothesized by other judges that it is undoubtedly
3  counsel's ethical and moral obligation that when they have
4  a client execute a settlement agreement that's been
5  negotiated, that they have the obligation, as I said, to
6  ensure, at least to the best of their ability, that the
7  terms and conditions are complied with.
8           As this Court is aware, the settlement agreement
9  provided in paragraph 1 that there should be a charitable
10 donation in the amount of $1,500 to North Star Junior
11 Sailing of Harrison Township, concurrent with the execution
12 of this agreement.  It didn't call for payouts, didn't call
13 for anything - concurrent.
14          I believe that counsel had the obligation to
15 assure that that check was posted, that the donation was
16 made concurrent with the execution, and that's what this
17 provided.  This was done on June 10th.  And I don't believe
18 that this settlement agreement was signed in vacuo.
19          And it was only I began badgering, and I'll admit
20 it was badgering, I kept on asking where is the check?
21 Where is the donation?  And I was always rebuffed.  In
22 fact, it went so far, your Honor, as I was told that Mr.
23 Burnham had contacted my client and left messages at phone
24 numbers.  I have checked with my client.  My client is
25 here.  No such phone call was ever made.  But most

1   importantly, ab initio, the settlement agreement wasn't
2   complied with when counsel had their client execute the
3   settlement agreement.  They knew or should have known that
4   there was no charitable donation made concurrent with the
5   execution of the settlement agreement.  And, therefore, to
6   permit counsel to withdraw basically exonerates them for
7   the failure or more importantly, the misrepresentation
8   contained within the settlement agreement.
9           I would submit to the Court, that the failure to
10  have the concurrent donation was a clear misrepresentation,
11  which Mr. Burnham entered into and counsel, I would
12  suggest, knew or should have known of that, and therefore,
13  not permitted Mr. Burnham to sign the settlement agreement
14  or not have him sign the settlement agreement until that
15  donation was made.
16          Thank you, your Honor.
17          THE COURT:  All right.  Anything further, on any
18  of those points, Mr. Cantor?
19          MR. CANTOR:  No, I don't believe so, your Honor.
20  I think it's, it's again, I go back to the point that is
21  that clients agree on their own.  We are all big boys and
22  girls here.  They signed it and they agreed to it.  I can't
23  trace my clients afterwards to see if they are going to do
24  it.  Every time Mr. Weintraub called, we communicated to
25  our client, we tried to make calls, we followed up the best

1  we could.  We did everything we could to try and do this,
2  you know.  You met my client, your Honor, when he was here.
3  And I think that hopefully he'll come in next time you
4  order him to come in and you can ask him about this.
5        But the more interesting issue to me is they say
6  we don't have any indication whether Mr. Burnham objects or
7  consents to this motion to withdraw.  He just communicated
8  with the Court.  He didn't say anything about objecting to
9  it.  He knows we're withdrawing.  He's got a copy of our
10 motion.  And he knows he was supposed to come here today.
11 And he knows he owes the money, too.
12       I mean, I think that what's happening here is
13 we're taking a very small matter and blowing it away out of
14 proportion.  I mean, he'll have to comply with the
15 settlement and your injunction.  And the fact we're no
16 longer counsel has nothing to do with that.
17       THE COURT:  I agree upon consideration of the
18 motion and the presentations here that the Brooks Kushman
19 Firm should be permitted to formally withdraw.  And I note
20 the July 8th letter, which followed two weeks following the
21 signing, the final signing of the injunction and the
22 agreement to settle.  The July 8th letter indicated very
23 clearly to the defendant that there would be no further
24 representation provided.  And all this is of course against
25 a background of counsel not having been paid in the first

1  instance.  I recollect that was one of the earlier things
2  that was noted.
3          Mr. Tobin had come in and continued at the
4  Court's urging to try to arrange an appropriate resolution
5  of the case, which had already been discussed.  So to a
6  certain extent, it seems to me the firm and counsel's firm
7  has provided a service pro bono here for a civil litigant.
8          But irrespective of that, and frankly unrelated,
9  not motivated in any way by that observation, it is clear
10 to me that the defendant has an ample notification of this
11 hearing, has for whatever reason, whether the stated reason
12 or something else, not appeared today in order to be able
13 to state his view.
14         And I would say further that if he were in
15 agreement with the proposed withdrawal, the withdrawal
16 would be permitted.  And unless he said something very,
17 very persuasive, were he in disagreement with the proposed
18 withdrawal, it would still be permitted.  So the client's
19 view in this, under the present circumstances, would have
20 little weight in the Court's determination.
21         I set hearings such as this in motions to
22 withdraw from representation and direct that the client be
23 personally present on the record, principally to
24 communicate clearly with the client so that the client
25 knows without doubt what is going on and what will be the

1  impending obligations, responsibilities, deadlines and so
2  forth, and to provide something of a last-ditch opportunity
3  for the client to say something that may be persuasive with
4  respect to whatever the basis may be, the stated basis of
5  the attorney's desire to withdraw from representation.
6         Sometimes it's lack of communicativeness, lack of
7  responsiveness to the attorney's requests for interviews
8  and documents and so forth.  And the client does provide
9  something persuasive and says I have been lax, but I will
10 not be in the future.  I intend to meet with my attorney
11 today.  I have the documents with me.  We can repair this
12 relationship and go on.  In instances such as that, I've
13 said, well, let's just continue the representation at least
14 for the time being and see if it can be made to work.
15         In a case such as this, it's a different
16 scenario.  I think that the case concluded, at least on
17 paper, and that shortly thereafter, Mr. Tobin's
18 representation concluded as well, also on paper and
19 functionally.  It remains the client's obligation to live
20 up to what he signed, less so the attorney's obligation to
21 pay or to enforce the settlement, so forth.
22         But for reasons that I have expressed and reasons
23 stated in the motion, I'm going to grant the motion to
24 formalize the withdrawal of Mr. Tobin and Mr. Cantor and
25 the firm.

1                The motion to enforce the judgment was filed on
2     the 18th of November, I note.  The briefing was stayed on
3     the 3rd of December when I saw the motion to withdraw from
4     representation.  The response to the motion to enforce the
5     judgment would have been due on the 14th of December, I
6     note.  It would actually be overdue this week if it were
7     not construed as a dispositive motion.  But I'm assuming
8     that it would have been due on the 14th of December, which
9     is Monday next.
10               I will today enter an order allowing withdrawal
11    of the defendant's attorneys; make it clear that the
12    defendant is either going to be in a position of
13    self-representation or he may rapidly acquire the services
14    of a substitute attorney; and make clear also that any
15    response to the motion to enforce the settlement agreement
16    shall be due on or before the 28th day of December, which
17    would be two weeks post deadline, assuming that I am
18    correct on my calculation of December 14th.
19               I recognize the possibility that on or before
20    that day, it is conceivable that a substitute attorney may
21    communicate with Mr. Weintraub and possibly arrange by
22    agreement some alternate date of response or something of
23    that nature.  But it seems to me the likelihood of that is
24    slim.  I only note that it has happened in some cases where
25    a substitute attorney has come in, asked for some

1  additional time or other accommodation, as often as not,
2  it's granted.
3           Let me say one other thing.  I had counsel in
4  chambers for an initial discussion on these motions upon
5  learning that the defendant had not personally appeared.  I
6  was not aware that Plaintiffs were personally present
7  today.  And although my thought was that we might have been
8  able to have resolved this motion without an actual
9  in-court formal appearance, that assumption was made based
10 upon a belief there was no one here but lawyers.  And I
11 would not have called counsel in to try to get their
12 positions in an off-the record setting had I known that
13 clients were here.
14          And I think it is good to have an in-court, open
15 court, on-the-record discussions in these matters whenever
16 a client is here.  And I just want to say that so the
17 clients understand there was nothing surreptitious intended
18 or out of the ordinary intended in that regard.  And I
19 thank counsel for their courtesies in that respect as well.
20          Nothing else for the record, Mr. Weintraub, or do
21 you have anything?
22          MR. WEINTRAUB:  A couple things, your Honor.
23          Knowing that you have set the date December 28th,
24 assuming arguendo based upon past conduct, if Mr. Burnham
25 fails to respond, does not get substitute counsel, will the

1  Court then issue a contempt citation?  And if so, we will
2  need an address for Mr. Burnham.
3            THE COURT:  I think that there is an address in
4  that e-mail, isn't there?
5             Is there an address, Mr. Cantor.
6            MR. CANTOR:  Yes, your Honor.  We'll be happy to
7  provide Mr. Weintraub with a last known address we have for
8  him.  In fact, here's the letter where we sent the motion
9  to him.
10            MR. WEINTRAUB:  It's Grand Ledge.
11            MR. CANTOR:  Yeah.  Here is the letter.
12            MR. WEINTRAUB:  I know.  I have that.
13            MR. CANTOR:  The termination letter is the same
14  address.  The termination letter we attached, it's got his
15  address on there as well.
16            THE COURT:  That is what you believe to be his
17  mailing address?
18            MR. CANTOR:  Yes.
19            THE COURT:  And of course, there's also the
20  e-mail address.
21            MR. CANTOR:  Correct.
22            THE COURT:  Which might not be a bad idea to
23  communicate.
24            MR. WEINTRAUB:  The e-mail address doesn't
25  obviously help us if the Court is going to issue a contempt

1  citation.  It has to be served.
2          THE COURT:  I'm sorry?
3          MR. WEINTRAUB:  He would have to be served
4  personally.
5          THE COURT:  Indeed.  Indeed.  If nothing happens
6  on or before the 28th of December, if there's silence, then
7  your motion already seeks -- let's see.
8          MR. WEINTRAUB:  It seeks enforcement.
9          THE COURT:  Enforcement in general, yes.
10         MR. WEINTRAUB:  I can let --
11         THE COURT:  I would, based upon your motion and
12 the way that it is phrased and the prayer for relief, after
13 the 28th of December, in the event that there is nothing
14 else filed, an appearance of an attorneys, a response to
15 the motion or something of that nature, I would issue an
16 order to show cause with a date set some time in January
17 why Mr. Burnham should not be held in contempt of court for
18 failure, among other things, failure to answer or to
19 respond to the motion and substantively failure or
20 apparently failure at least to comply with the settlement
21 agreement that he had signed.  So I would trigger that on
22 my own.
23         It would also be important, however, for Mr.
24 Cantor, Mr. Tobin to ensure that the order that I enter
25 with the deadlines and the cautions that it's going to

1    express is, in fact, provided to Mr. Burnham, and you
2    confirm that that be done.  I will probably actually
3    include a proviso in the order that directs you as a
4    condition of withdrawing, to state on the record or file
5    something in the record, a notation that a copy of the
6    Court's order has been delivered to Mr. Burnham and that
7    you are assured that he has indeed received it.
8             MR. CANTOR:  Your Honor, we plan on any thing --
9    once you issue the order, we plan on getting it to him as
10   best we can, where we know he is now.  And we'll also try
11   to call him and tell him what you said today so he knows
12   how serious this matter is.
13            MR. WEINTRAUB:  So the notices will be sent
14   certified return?
15            THE COURT:  Well, you mean from the Court?
16            MR. WEINTRAUB:  No.  From Mr. Cantor to Mr.
17   Burnham.
18            THE COURT:  To assure -- methodology is not so
19   important as to have confirmation from counsel on the
20   record, that counsel is assured that Mr. Burnham has in
21   hand the Court's order.  That can be done six different
22   ways that I can think of.
23            MR. WEINTRAUB:  Right.
24            THE COURT:  The methodology is not as important
25   as the result.  All right?

1         MR. WEINTRAUB:  Thank you, your Honor.
2         MR. CANTOR:  Thank you, your Honor.
3         THE CLERK:  All rise.  Court is now in recess.
4         (Proceedings adjourned at 10:35 a.m.)
5                    *     *     *

1
2                      **CERTIFICATE OF REPORTER**
3          As an official court reporter for the United
4   States District Court, appointed pursuant to provisions
5   of Title 28, United States Code, Section 753, I do hereby
6   certify that the foregoing is a correct transcript of
7   the proceedings in the above-entitled cause on the date
8   hereinbefore set forth.
9
10
11                 s/ Christin E. Russell____
12          Christin E. Russell, CSR, RPR, FCRR, CRR
13                Federal Official Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25